[No. 3226.]

## J. H. COLE v. THE STATE.

1. EMBEZZLEMENT—JURISDICTION—VENUE.—The indictment contained two
counts, one for embezzlement of goods held on commission by the accused,
and the other for the conversion or embezzlement of the proceeds. The
goods were received in B. county, and the proceeds converted in W. county.
After the evidence was submitted, the State elected to claim a conviction
on the count charging the embezzlement of the goods. *Held*, that the
venue of the offense, under the count elected, was properly laid in B.
county, the district court of which county had jurisdiction under Article
·219 of the Code of Criminal Procedure, which provides that "the offense
of embezzlement may be prosecuted in any county in which the offender
may have taken or received the property, or through or into which he
may have undertaken to transport it." Had the State elected to pro-
ceed on the second count, jurisdiction would have belonged to the dis-
trict court of W. county, wherein the goods were sold and the proceeds
appropriated.

2. SAME—CHARGE OF THE COURT—INTENT.—As defined in a former de-
cision of this court (*Leonard* v. *The State*, 7 Texas Ct. App., 419), "em-
bezzlement is a fraudulent appropriation of the property of another by a
person to whom it has been entrusted. There is no settled mode by
which this appropriation must take place, and it may occur in any of the
numberless methods which may suggest itself to the particular indi
vidual. The mode of embezzlement is simply matter of evidence, and
not pleading." In the same opinion, with regard to the question of in-
tent, it is held: "If he (the accused) sold it (the property) with the hon-
est purpose of delivering the proceeds to the owner, and after such sale
conceived the fraudulent intention, he would not be guilty of embezzle-
ment. * * * But if the sale was simply a means to effectuate his
fraudulent purpose to convert the property to his own use—in other
words, to steal it—it is as much an act of conversion as if he had shipped
it clandestinely to a foreign port and there disposed of it." The princi-
ple embraced in the requested charge on the subject having been, by the
general charge, submitted in harmony with the rules thus declared, the
requested charge was properly refused.

3. NEWLY DISCOVERED EVIDENCE—NEW TRIAL, asked upon the ground of
newly discovered evidence, was properly refused, in view of the fact that
such evidence, considered in the light of the evidence adduced, was not
probably true.

4. EVIDENCE—PRACTICE.—Defendant's counsel, on cross-examination, asked
the prosecuting witness, W.: "Did you or not ever receive an order from
defendant on W. G. Cheney to pay your firm claim against him?" The
court, on objection, ruled out the question as asked, and held that its

proper form was: "Did you ever receive any order from the defendant before the prosecution was commenced?" *Held*, correct.

5. Embezzlement—Fact Case.—See evidence held sufficient to sustain a conviction for embezzlement.

Appeal from the District Court of Bell. Tried below before the Hon. B. W. Rimes.

The conviction was for the embezzement of the property of Wilson & Austin, exceeding in value the sum of one hundred and thirty dollars. A term of two years in the penitentiary was the punishment awarded.

J. L. Wilson was the first witness for the State. He testified that he was engaged in the hardware, tin and stove business in the town of Belton, Bell county, Texas. He was associated in that business with George N. Austin, under the firm name of Wilson & Austin. That firm was doing business in its present quarters in the year 1883. The witness first saw the defendant on the tenth day of September, 1883, when he came into the witness's store, introduced himself, and said that he wanted to purchase some goods. He said that he was merchandising in the town of Florence, Williamson county, Texas, and, with the view of making some purchases on time, made to the witness a statement of his financial condition. In reply the witness told him that his financial showing was perfectly good, but that he did not want to sell him any goods. After some further discussion of the matter, the witness agreed to let him have some goods on consignment, to sell on commission, and witness wrote out a commission contract which the defendant signed. That document was the same as that now in the possession of the witness. Witness wrote the whole of it, except the signature "J. H. Cole," which was signed by the defendant. After the execution of the contract the witness let him have the goods mentioned in the indictment, which bill of goods he, the defendant, received from the witness, in his store, in Belton, Bell county, Texas. He received them on and under the commission contract described.

The goods delivered to the defendant were to be sold by him for cash, and he was to account to Wilson & Austin for the same on the first day of each month. No special rate of commission was stipulated or agreed upon, but the goods delivered were marked down so that defendant could make large or small commission as he thought best. The paper exhibited to the witness

was a copy of the bill of goods delivered to the defendant under the contract. These goods belonged to the firm of Wilson & Austin, and were worth, item by item, the amounts set out in the bill and in the indictment. All of the articles named in the bill were to be sold by the defendant on commission, except one box stove, of the value of $9.25, sold on November 23, 1883, and a balance of twenty cents on solder. The defendant obtained the goods set out in the bill and the indictment from the firm of Wilson & Austin September 10, 1883. Witness never gave his consent, or agreed that Cole, the defendant, should sell or dispose of the goods except in the manner provided and agreed upon in the contract. The defendant came to Belton on the fifteenth day of December, 1883, to see witness and Austin. He told witness that he could make no settlement at that time, and witness gave him until January 10, 1884, in which to make his settlement. On the twenty-third day of November, 1883, the defendant paid the sum of forty dollars on the original bill, leaving one hundred and thirty dollars and seventy cents still due, from which the stove at nine dollars and twenty-five cents was to be deducted. Of this amount, stated as due, the defendant has never paid a cent, and has never returned any of the articles delivered to him by Wilson & Austin. A day or two after defendant's visit in December, 1883, witness sent C. C. Rather to Florence to make a settlement with him. Witness instructed Rather to collect the money for all goods sold, and to take possession of all goods remaining unsold that belonged to Wilson & Austin. Witness gave him a letter or order to defendant, authorizing defendant to make settlement. That letter or order was written under the commission contract on the same piece of paper.

The defendant Cole got possession of the goods described by virtue of his agreement to sell the same for Wilson & Austin on commission. Witness never, at any time, consented that the defendant should convert the goods to his own use, or dispose of them in any manner other than that stipulated in the contract. The defendant, at no time prior to the prosecution of this indictment, proposed to give Wilson & Austin an order on Mr. Cheney for the amount of his, defendant's, debt. Cheney called to see witness's firm in Belton in January, 1884, and again in March, but neither paid nor offered to pay any amount of money whatever for the defendant. C. C. Rather returned to Belton from Florence with neither money or goods. Defendant at no time

notified witness or Wilson & Austin that he expected or intended'
to remove from Florence.    Witness could not, of his own knowl-
edge, state that the defendant embezzled or misapplied the
goods.    The State then introduced in evidence the following:

"BILL OF GOODS.

BELTON, TEXAS, September 10, 1883.
Mr. J. H. Cole—Bought of Wilson & Austin, dealers in hard-
ware, stoves, tinware, wagons and agricultural implements.
East avenue.  On consignment account.

| | | |
|---|---:|---:|
| To 2 Mohawk No. 7–16 stoves, $10.50 | $21 | 00 |
| To 1 Mohawk No. 7–18 stove | 12 | 75 |
| To 1 Central No. 7 stove | 15 | 00 |
| To 1 Superior 7D stove | 18 | 00 |
| To 1 Mohawk No. 8–20 stove | 18 | 50 |
| To 2 Osage stoves No. 20, @ $4.75 | 9 | 50 |
| To 2 Osage stoves No. 25, @ $6.00 | 12 | 00 |
| To 2 Osage stoves No. 28, @ $6.50 | 13 | 00 |
| To 2 Osage stoves No. 31, @ $8.25 | 16 | 50 |
| To 2 Linden stoves No. 20, @ $6 50 | 13 | 00 |
| September 12, 2 stoves, @ $6.00. | 12 | 00 |
| November 23, 1 Box stove | ·9 | 25 |
| "      "   bal. on solder | | 20 |
| "      "   by cash $40. | | |

$170 70— $40 00

" " amount to bal.................... 130 70

$170 70—$170 70

"      "   to balance down................$130 70

The contract, written on a bill or letter head of Wilson &
Austin, was then introduced in evidence by the State.    It reads
as follows:

"BELTON, TEXAS, September 10, 1883.
"Wilson & Austin:
"You will please send me the following bill of stoves, which I
agree to keep the same in good order and on consignment for
your acct. till sold, and I pledge myself to remit promtly on the
first of each month for all goods of yours sold by me, and fur-

ther to turn over at any time all goods not sold, if called upon by you to do so, and said goods not to be taken only as consignment acct.

"J. H. COLE."

Under this contract was written the following order:

" We hereby authorize Mr. C. C. Rather to act as our agent, and to act for us in settling up with Mr. J. H. Cole.

"WILSON & AUSTIN."

George N. Austin was the next witness for the State. He testified that he was the junior member of the firm of Wilson & Austin, dealers in hardware, tinware and stoves, in the town of Belton, Bell county, Texas, and was such member of the said firm in the year 1883. The defendant came to the store of Wilson & Austin in September, 1883, to buy goods. Mr. Wilson, the senior member of the firm, did the trading with defendant, but the witness heard part of what was said by the parties. Wilson refused to sell the defendant any goods, but after some discussion agreed to let him have some to sell on commission. Wilson wrote out a consignment contract and the defendant signed it. Witness heard Mr. Wilson say to the defendant: "Now, Mr. Cole, do you understand this matter? If you get away with these goods you will be liable to go to the penitentiary." The defendant replied: " Yes, I understand that." After the execution of the consignment contract, Mr. Wilson let the defendant have the goods mentioned in the indictment, which he, defendant, received in the store house of Wilson & Austin, in the town of Belton, Bell county, Texas, on the tenth day of September, 1883. The defendant has never since paid for the goods, nor has he ever returned the goods, or any part of them, to Wilson & Austin.

The defendant visited witness's firm in Belton on the fifteenth day of December, 1883. A day or two after that visit the firm sent Mr. C. C. Rather to Florence, with instructions to collect the proceeds of the goods sold, and to take possession of the goods unsold. Rather returned to Belton with neither money nor goods. The witness had never consented that the defendant should dispose of the goods in any manner other than that provided for in the consignment contract. He had never consented that the defendant should misapply or otherwise con-

D1

vert them to his own use. Defendant got possession of the goods under contract to sell them on commission. They were never sold to him.

C. C. Rather was next witness for the State. He testified that three or four days before Christmas, 1883, Wilson & Austin, and several other merchants in Belton, Texas, employed the witness to go to Florence, Williamson county, for the purpose of making business settlements for them with J. H. Cole, the defendant. Witness went to Florence, but failed to find Cole. He saw a house in Florence in which the defendant was said to have conducted business, but it was empty and unoccupied, and witness could find no trace of Cole or the goods. Wilson & Austin directed witness to collect from Cole all moneys for goods sold, and to take possession of all goods belonging to them, unsold. Failing to find the defendant, the witness returned to Belton. While at Belton the witness met Mr. S. R. Seratt, constable of precinct number four, Williamson county, and told him his, witness's, business, at Florence. The house recently occupied by defendant contained one stove.

The State next introduced S. R. Seratt as a witness. He testified that he resided at Florence, Williamson county, Texas, and was constable of that precinct. He was acquainted with the defendant, J. H. Cole. Cole was a tinner by trade. He had a store at Florence in the year 1883, in which he had a stock of hardware, tinware, stoves and wire. He, defendant, closed out or broke up his business at Florence about the middle of December, 1883. Witness did not know exactly how or when he left. All that witness could say about it was that he was at Cole's store one evening, when the business appeared to be going on as usual. Witness went to the country the same evening and returned the next afternoon, when he found the store house empty and Cole gone. Witness followed to Georgetown, about sixteen miles distant, but failed to find Cole or any trace of the goods. Witness never saw Cole from that time until during the present term of the Bell county district court.

Cole's family did not leave Florence with him, but remained at the house of W. G. Cheney, Mrs. Cole's father, where they still are. An attachment for Mr. Cheney as a witness for the defense was placed in the hands of the witness to be served. The witness thought he saw Cheney standing in the door of his house a day or two before this trial, and went to the house to serve the attachment, but Mrs. Cole closed the door in his face

and would not let him in.   Witness was not willing to force the door to serve an attachment, so he told Mrs. Cole that he wanted to serve Cheney as a witness for her husband, but Mrs. Cole locked the door.   Witness waited around the house for half a day to serve Mr. Cheney, but he avoided service by staying in the house.   C. C. Rather arrived in Florence three or four days after Cole left.   Rather's business was to collect claims for some Belton merchants.   Witness did not know whether or not Cole went off in search of trade work.

Allen Wade was the next witness introduced by the State. He testified that he lived about four miles distant from the town of Florence, in Williamson county.   The witness owned a wagon and team, and frequently hauled freight for wages.   He was acquainted with the defendant.   Defendant was in business in Florence in December, 1883.   On or about the middle of that month Cole told the witness that he wanted witness to haul a load for him to Georgetown, a distance of sixteen miles.   He agreed to pay the witness five dollars in money and a gallon of whisky for the job.   Cole hired Ewen Queen and his wagon, and two others beside the witness.   The wagons were loaded late in the evening, and the journey to Georgetown was commenced about ten o'clock at night.   The loads consisted of stoves, tinware and barbed wire.   Witness and the others of the freight party reached Georgetown between seven and eight o'clock next morning, and the witness delivered his load at the hardware store of Mr. J. H. Gholson.   Cole was present, and paid the party for hauling the goods.   Cole said, when the party was loading on the night before, that he was anxious to catch the train at Georgetown.   Witness did not see him take the train that day, and did not know where Cole went, but witness did not see him again until he saw him on this trial.

Ewen Queen testified, for the State, that he assisted Allen Wade and two others in hauling Cole's goods to Georgetown, where they were delivered to J. H. Gholson.

J. H. Gholson was the next witness for the State.   He testified that he resided in Georgetown, Williamson county, Texas. Early one morning in December, 1883, some days after the middle of that month, the defendant came to witness, at his store in Georgetown, and proposed to sell the witness some stoves, tinware and fencing wire, of which he had some three or four wagon loads.   After some conversation the witness bought the lot for two hundred dollars, paying for the same partly in cash

and partly in short time notes. Among the stoves so purchased from the defendant by the witness were some "Mohawk," "Superior," and "Osage" stoves, corresponding with those mentioned in Wilson & Austin's bill of September 10, 1883. Defendant told the witness that he was going on to San Antonio. He had worked for the witness a year before he went to Florence. He always paid his debts to the witness. Witness had never heard any discussion of his reputation for honesty. When the witness paid Cole, and handed him the notes for the balance. Cole turned the notes over to his father-in-law, W. G. Cheney, and told witness to pay the amount of the notes to Cheney, which the witness did within the next two or three weeks. Witness did not hear Cole tell Cheney to collect the notes and pay Wilson & Austin's claim. If he gave Cheney any such direction in the presence of the witness, the witness had no recollection of it. If Cole made any statement as to his object in leaving the notes for collection in the hands of Cheney, witness had no recollection of it. Cole did say that he owed some debts in Belton, every cent of which he intended to pay. He said that he was going to San Antonio from Georgetown. San Antonio was on the route to Laredo.

R. W. Fulwiler testified, for the State, that he was the sheriff of Bell county, Texas, and held that office in 1883. On or about the first of January, 1884, a *capias* from the justice's court of precinct number one of Bell county, for the arrest of the defendant, was placed in his hands for service. The charge was embezzlement. Witness telegraphed to the sheriffs of various counties, and soon received a telegram from Laredo that defendant was in custody. Witness thereupon sent his deputy, W. G. Taylor, to Laredo, and Taylor brought the defendant back to Bell county on the twelfth of January, 1884. The State closed.

William McVay was the first witness for the defense. He testified that during the months of September, October, November and up to the middle of December, 1883, he clerked for the defendant in his store in Florence, Williamson county, Texas. The witness sold goods only, and had no knowledge whatever of how defendant secured his goods or upon which character of contracts he obtained them. Cole was a tinner by trade, but sold stoves and wire as well. Witness never saw his bills, and could not say upon what terms he procured goods.

Ira Hickman testified, for the defense, that in September, 1883,

he hauled a load of stoves from Belton to Florence for the defendant. He did not hear the trade for the stoves, nor did he know the name of the man from whom Cole bought or got them.

W. G. Taylor, deputy sheriff of Bell county, testified that he went to Laredo, Texas, after the defendant, in January, 1884, He found defendant in jail and brought him back to Belton.

Among a number of other grounds, the motion for new trial presented the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant's conviction was upon an indictment for embezzlement, which originally contained two counts; one for the embezzlement of goods placed in his hands as agent of, and to be sold by him on commission for, Austin & Wilson; and the other for the fraudulent conversion or embezzlement of the money received by him as agent on the sale of said goods. After the evidence was elicited, the district attorney elected to claim a conviction on the count for the embezzlement of the property, and the other count was abandoned.

This prosecution was had in the district court of Bell county. The property, if converted or embezzled, was so embezzled in the county of Williamson. We have a statute specially regulating the venue in cases of embezzlement. It provides that "the offense of embezzlement may be prosecuted in any county in which the offender may have taken or received the property, or through or into which he may have undertaken to transport it." (Code Crim. Proc., Art. 219.) It is in proof that the goods alleged to have been embezzled were "received" by appellant in Bell county, and under the statute the venue could properly be laid, as was done, in that county. Had the indictment, or rather the count upon which the defendant was tried, been for the embezzlement of the money or proceeds arising from the sale of the property, then, indeed, the district court of Bell county would have had no jurisdiction, since the goods were sold and the money received and embezzled in the county of Williamson.

Exception was taken by defendant to the charge of the court, but the general charge, together with the specially requested instructions of defendant, which were given, submitted fully the

law as announced by this court in *Leonard* v. *The State*, 7 Texas Court of Appeals, 419.   In that case it was said embezzlement is "a fraudulent appropriation of the property of another by a person to whom it has been entrusted.   There is no settled mode by which this appropriation must take place, and it may occur in any of the numberless methods which may suggest itself to the particular individual.   The mode of embezzlement is simply matter of evidence and not pleading.   *   *   *   If he, appellant, sold it with the honest purpose of delivering the proceeds to the owner, and after such sale conceived the fraudulent intention, he would not be guilty of embezzlement.   *   *   *   But if the sale was simply a means to effectuate his fraudulent purpose to convert the property to his own use—in other words to steal it— it is as much an act of conversion as if he had shipped it clandestinely to a foreign port and there disposed of it."

Having thus submitted the law, it was not error to refuse defendant's third special requested instruction, because the principle announced in it was embraced in the general charge.

The testimony sought from the absent witness, Cheney, who was the father-in-law of defendant, is not probably true when considered in the light of the other evidence elicited at the trial, and we cannot say that the court erred in refusing the new trial in so far as that proposed evidence was concerned.

Defendant's counsel, on cross-examination, asked the prosecuting witness Wilson, "Did you or not ever receive an order from defendant on W. G. Cheney to pay your firm claim against him?" On objection by the State that the question was improper and irrelevant, the court sustained the objection, holding that the proper question should be, "Did you ever receive any order from defendant before the prosecution was commenced." This ruling was correct.

The other errors complained of are not considered well taken. We find no reversible error in the record.   This conviction for embezzlement is in our opinion amply sustained by the evidence, and the trial in all respects appears to have been fair and impartial.

The judgment is affirmed.

*Affirmed.*

Opinion delivered June 18, 1884,